SUPREME LODGE, KNIGHTS OF PYTHIAS,

*v.*

LILLIAN M. RUTZLER, trustee, et al.

[Decided September 20th, 1916.]

Where a fraternal insurance policy was payable to one of the daughters of insured, as trustee for a minor daughter, and there was an oral understanding that, in case anything happened to the minor daughter, it was to revert to her sisters, and the minor daughter survived insured, but died before the benefit was paid, her administratrix, and not the trustee or the sisters, is entitled to the proceeds of the policy.

---

On bill, answer, replication and proofs.

*Messrs. McDermott & Enright,* for the complainant.

*Mr. Frank G. Turner,* for the defendants.

LEWIS, V. C.

This is on bill praying for an injunction to enjoin and restrain a suit at law brought by Lillian M. Rutzler, trustee, against the complainant in this suit.

Henry B. Lupton was a member of section 137 of the Endowment Rank, Knights of Pythias, and under the certificate of membership issued to him, the board of control of that order agreed to pay to his daughter, Lillian M. Rutzler, as trustee for Florence S. Lupton, the sum of $1,000. Henry B. Lupton died intestate February 2d, 1911; his daughter, Florence S. Lupton, the beneficiary in the policy mentioned, died in May, 1911, a little over three months after the death of her father, and before the payment of the amount secured in the policy. Letters of administration upon the estate of Florence S. Lupton were granted to her mother, Anna R. Lupton, to whom the complainant paid the sum of $1,000 mentioned in the policy. She thereupon proceeded to pay the funeral expenses, doctor's bill for last sickness, cost of burial plot in the cemetery, surrogate's fees, bills for flowers, cost of monument at grave, and a few minor debts, and for nursing, board and incidental expenses. After making these payments she divided the balance into three parts, and sent checks for one-third each to her living daughters, Mrs. Haws and Mrs. Rutzler. The daughters did not use the checks so sent them. Mr. and Mrs. Lupton had not lived together for a great many years preceding his death. Florence continued to reside with her mother. The policy was originally made payable to the two other daughters, Mrs. Haws and Mrs. Rutzler, but on February 3d, 1906, at the wish of the father, the two daughters, Lillian and Emily, consented to have the policy made payable to Lillian as trustee for her sister Florence. Mrs. Rutzler's testimony in regard to that is as follows:

"*Q.* Now, previous to the time of that change, did you have any talk with your father in reference to it?

"*A.* Yes, sir.

"*Q.* What was the conversation which you had prior to the change?

"*A.* My father thought, inasmuch as we two girls were provided for by marriage, that it was only fair to look after the unmarried sister,

which we agreed upon, and it was, therefore, changed to her, with me as trustee to look after the fund, if anything happened to my father.

"*Q.* What, if any, conversation, did you have with your father in reference to the disposition of the fund?

"*A.* It was to revert back to my sister and myself, in equal shares."

On this point Mrs. Haws testified as follows:

"*Q.* Now, tell us what the conversation was at the time that the policy was to be changed.

"*A.* I cannot talk very loud, but at that time my father and my oldest sister and myself talked it over, and decided that as we two girls had been provided for in marriage, that it would be the best thing to let this money go to my younger sister, Florence, but knowing that she was not strong, and never had been, and at that time he said that at any time anything should happen whereby Florence should not get this money, that it should revert to my older sister and myself, as the policy had originally stood."

After the death of the father, and before the death of Florence, the trustee notified the Knights of Pythias of her father's death and demanded that the money be paid to her as trustee for her sister Florence, as provided for in the policy.

The Knights of Pythias had not paid over the amount of the policy at the time of the death of Florence, and on the mother's taking out letters of administration on the estate of Florence, the Knights of Pythias paid over the money to the mother as administratrix of her daughter's estate.

Doubtless the prudent thing for the complainant to have done would have been to file a bill of interpleader, pay the money into court and let the administratrix and trustee contest the matter. This was not done, however. The Knights of Pythias took a chance and cut across lots by paying the money directly to the administratrix, apparently reaching the same conclusion that I have reached, viz., that only in the event that Florence predeceased him was the policy to be paid to the two other daughters. That being the case, if the Knights of Pythias had paid the money over to the trustee, there was nothing for the trustee to do but to turn it over to the administratrix.

Under these circumstances, at the present time, the parents of a minor are entitled to all of the personal estate of their

deceased minor children. (See laws of N. J., 1914, section 169, sub-section III., page 71.) But as Florence died in 1911, that act would not apply, and the mother and the two daughters would, therefore, each be entitled to one-third, after the payment of debts, funeral charges and just expenses.

The mother, as administratrix, says that she has used up all the estate, but I understand there has been no final accounting. It seems to me that there should be a final accounting and the two daughters can file their exceptions, and if they can show that there is anything coming to them, the bondsmen would be liable in case the mother has no estate. In any event, I think the complainant has done the correct thing, and the prayer of the bill will be granted.